## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

JALEN ALEXANDER,

      Plaintiff,

v.                              Case No. 2:20-cv-00340

BETSY JIVIDEN and DONALD AMES,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court are Defendants' Motion to Dismiss Complaint (ECF No. 28), Plaintiff's Motion for Preliminary Injunction (ECF No. 42), and several Motions for Leave to Amend or Supplement Complaint filed by Plaintiff (ECF Nos. 33, 47, 49, and 50).[1]  The parties, and Plaintiff in particular, have made a convoluted series of filings that have unnecessarily complicated this matter.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Motions for Leave to Amend or Supplement his Complaint (ECF Nos. 33, 47, 49, and 50), **DENY** Plaintiff's Motion for Preliminary Injunction (ECF No. 42), **GRANT** Defendants' Motion to Dismiss Complaint (ECF No. 28), and **DISMISS** this matter from the docket of the court.

---

[1] The undersigned will address Plaintiff's Letter-Form Motions for Appointment of Counsel and for Status Hearing (ECF Nos. 35 and 46) in a separate order.

I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

A.    *Plaintiff's Initial Complaint.*

On May 14, 2020, Jalen Alexander ("Plaintiff"), an inmate at the Mount Olive Correctional Complex ("MOCC"), filed his initial Complaint in this matter pursuant to 42 U.S.C. § 1983.  (ECF No. 3).  The initial Complaint named as defendants Betsy Jividen ("Jividen"), Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Donnie Ames ("Ames"), Superintendent of MOCC, and Aaron Sargent ("Sargent"), MOCC Program Specialist (collectively "Defendants"), and summarily alleged that Plaintiff has "repeatedly been denied access to the prison law library to conduct assistance with my case."  (*Id.* at 4).  The initial Complaint further alleges that Plaintiff has "been denied the right to represent [himself] and [has] been placed in a position where barriers have been put in place to deny [him] access to the law library, law books, case laws, [and] attorneys." (*Id.* at 4).

Plaintiff further generally alleged that "I am denied access to the courts by this Administration" and "officials at this facility advise me that I need a 'court order' to be able to challenge my case in the prison law library and I know this is completely false, so I am forced to file this civil action."  (*Id.* at 5).  However, the initial Complaint itself did not specify any particular court case or matter in which Plaintiff had allegedly suffered actual harm from a lack of meaningful access to the law library, or any specific conduct by the named Defendants.[2]  The initial Complaint sought the following forms of relief:

---

[2] Attached to the initial Complaint is a copy of a grievance Plaintiff filed on March 3, 2020, stating that he was considering filing a complaint with the Governor's Office and a § 1983 Complaint in the United States District Court concerning denial of access to the law library and asserting that he does not need a court order for such access.  (ECF No. 3, Attach. 1, Ex. A).  In response to this grievance, a Unit Manager responded "As you were previously informed, if you require 7 day a week access to the law library, you must provide documentation from the court or your attorney showing the upcoming deadline and must be shown to the MOCC&J librarians.  If you choose not to do so, you must abide by the monthly schedule put

(1) monetary damages from each defendant; (2) a court order requiring the prison administration to "change their access to courts policy to conform to the U.S. Constitutional rights of prisoners; and (3) a court order requiring Jividen to terminate Sargent as "law library officer" and replace him with "an individual competent to address legal issues for inmates." (*Id.* at 5-6).

B.    *Plaintiff's First Supplemental Complaint.*

On October 29, 2020, Defendants filed a Motion for More Definite Statement, which was granted by the court on November 16, 2020. (ECF Nos. 17, 19). On December 11, 2020, the court extended the deadline for Plaintiff to file his more definite statement to December 28, 2020. (ECF No. 22). However, that same day, Plaintiff filed a verified "Supplemental Complaint," which included the same March 3, 2020 grievance attached as Exhibit A. (ECF No. 23). Subsequently, on December 21, 2020, and December 30, 2020, respectively, Plaintiff filed identical copies of his "Supplemental Complaint," but attaches additional exhibits, which are incorporated by reference in the Supplemental Complaint. (ECF Nos. 24, 27).[3] Plaintiff's Supplemental Complaint removes Aaron Sargent as a defendant and further specifies that Plaintiff is suing Defendants Jividen and Ames in both their individual and official capacities. (ECF No. 24 at 1-2).

The Supplemental Complaint, which is the operative document upon which this matter is currently proceeding, specifies that Plaintiff arrived at MOCC on February 21,

out by the library which [illegible] two days." (*Id.*) Plaintiff then appealed that response to the Superintendent, who concluded "You are receiving 'meaningful access' to the law library on your scheduled days. The schedule allows for all inmates to have access to the law library." (*Id.*) This grievance response and denial was subsequently affirmed by the Commissioner's Office. (*Id.*)

[3] Because the "Supplemental Complaint" docketed at ECF No. 24 has the most complete set of exhibits, the undersigned will cite to that filing when discussing this set of documents (hereinafter "Supplemental Complaint").

2020, and addresses Plaintiff's filing of the March 3, 2020 grievance, which is attached as Exhibit A. Plaintiff specifically notes that, during the time period between March 3, 2020 and March 24, 2020, his grievance was denied at the initial level and Defendants Ames and Jividen upheld such denial. (*Id.* at 2-4, ¶¶ 7-10).

Plaintiff emphasizes that, during this time (throughout which he appears to have been housed in the prison's general population), he was preparing to file the instant *pro se* civil action for "denying me access to the law library and having barriers prevent me from having meaningful access to the law library." (*Id.* at 3-4, ¶ 11). The Supplemental Complaint further alleges that, on March 24, 2020, while still in general population, Plaintiff filed a complaint with the Office of Lawyer Disciplinary Counsel ("ODC") complaining about the conduct of his court-appointed counsel in his criminal case pending in the Circuit Court of Raleigh County, West Virginia. (ECF No. 24 at 4, ¶ 12).

The Supplemental Complaint further specifies that Plaintiff has twice been housed in segregation at MOCC (which he refers to as the "Segregation Housing Unit" or "SHU"). The first time was on disciplinary or punitive segregation from June 15, 2020 to August 10, 2020, and the second time was on disciplinary or punitive segregation from October 5, 2020 to November 10, 2020. (*Id.* at 6, ¶ 15). Then, it appears that a decision was made to retain Plaintiff in the SHU on administrative segregation and, thus, he has been continuously housed on segregation since October 5, 2020. (*Id.*)

Plaintiff alleges that his in-person access to the law library has been unconstitutionally limited while he has been housed in segregation. (*Id.* at 6, ¶ 16). Plaintiff states "[m]e being detained in 'SHU' we are not allowed to the law library and have request forms to cite cases; however, I do not know what case laws to look up to

4

help me with my lawyer complaint. These request forms do not give you information on how to look [for] certain case laws to help you with certain legal documents." (*Id.*)

On July 27, 2020, while Plaintiff was in segregation, the ODC apparently dismissed his complaint for insufficient evidence. (ECF No. 24 at 6, ¶ 16). Nonetheless, Plaintiff speculates that, had the alleged barriers to access to the law library not been erected, he could have filed a "better" complaint which would have caused the ODC Lawyer Disciplinary Board to "investigate the situation, [and] force my lawyer to apply my constitutional rights, which would have made a big difference in the outcome of my case." (*Id.* at 4-5, ¶ 12). Thus, he claims that he suffered "actual injury" from a lack of meaningful access to the law library. (*Id.* at 6, ¶ 16).[4] Plaintiff further alleges that his restricted access to the MOCC law library has caused him actual injury by not allowing him "to file [his] pretrial habeas and additional grounds for [his] post-conviction habeas properly." (*Id.* at 7, ¶ 17). However, he provides no specific facts concerning his habeas proceedings or the claims he wished to raise.

Plaintiff again alleges that, while housed in segregation, he is denied physical access to the law library and is required to request documents from the library using an inmate request form and then copies of the documents are delivered to his cell. (*Id.* at 6-8, ¶¶ 16-19).[5] He further avers that the form he is required to use for this process contains a "page citing system." (*Id.* at 7, ¶ 17). Plaintiff states that "I do not know what case laws I need to look up or put in my habeas" and "[t]his page citing system and SHU

---

[4] The Supplemental Complaint acknowledges that Plaintiff's ODC complaint was subsequently reopened on October 17, 2020, because he "found a rule for lack of communication and [that he] proved to the lawyer disciplinary board [his] lawyer was not communicating with [him]." (*Id.* at 6, ¶ 16).

[5] Each version of the Supplemental Complaint contained in ECF Nos. 23, 24, and 27, contains an extra copy of the page containing paragraphs 19 and 20, which was probably due to a copying error when the document was first copied. The undersigned further notes that, although citation to case law is not necessary or appropriate in a complaint itself, Plaintiff's Supplemental Complaint documents are replete with citations to case law.

is causing me actual injury for my lawsuit, I do not know what materials to use." (*Id.* at 7, ¶¶ 17, 18). Plaintiff cites to case law in which courts have found that a system requiring prisoners to provide pinpoint citations or a "runner or paging system" to receive legal research materials may be unconstitutional. (ECF No. 9, ¶ 19). He further alleges that being housed in segregation and denied access to the law library "prevents [him] from being fully competent on law" to properly respond to the Defendants' request for a more definite statement herein and to make sure that any case law he is citing has not been overruled. (*Id.* at 7, ¶ 18).

Plaintiff's Supplemental Complaint further alleges that Ames and Jividen "showed misconduct by directly participat[ing] in the wrong." (*Id.* at 10-11, ¶¶ 21, 22). As to Ames, Plaintiff contends:

> In my grievance, Mr. Ames knew of the barriers implemented, but at that time did nothing to prevent those barriers causing me denial of access to the courts. Mr. Ames also approved of a policy with barriers erecting [sic] meaningful access to the law library also violating my right of access to the courts. Neverless [sic], . . . Mr. Ames approved of this page citing system which is also violating my rights for denial of access to the courts. Mr. Ames also failed to train his staff "Aaron Sargent" adequately enough to make sure he doesn't approve of this violation or obviously never trained him adequately enough to make him aware of this violation of my rights or anybody else's rights.

(*Id.* at 10, ¶ 21). He makes similar allegations against Jividen, claiming that she denied his grievance without attempting to "correct the barriers at the time they were implemented" and further contends that she "created or approved" the policy erecting the barriers to meaningful access to the law library and failed to adequately train her staff with respect to constitutional access to courts. (*Id.* at 10-11, ¶ 22). Plaintiff largely repeats these contentions in section V of his Supplemental Complaint titled "Legal Claims" and summarily contends that Defendants' conduct violated his rights under the

First, Fifth, and Fourteenth Amendments of the United States Constitution. (*Id.* at 13-14, ¶¶ 28, 29).

The Supplemental Complaint also generally alleges, for the first time, that Plaintiff is experiencing "campaign harassment, getting thrown into administrative segregation, not receiving fair disciplinary hearings by them not following policy procedures, money disappearing, and not getting envelopes to send out mail. I file grievances about these situations and they disappear." (*Id.* at 11-12, ¶ 25). Thus, Plaintiff appears to be alleging that the grievance process is inaccessible, making it impossible for him to redress his grievances, which he further claims violates his rights under the First, Fifth, and Fourteenth Amendments, and he attempts to hold Ames and Jividen liable for such actions. (*Id.* at 13-14, ¶¶ 28, 29).

Plaintiff further contends that he has "no plain, adequate or complete remedy at law to redress wrongs described herein" and that he will be "irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief Plaintiff seeks." (*Id.* at 14, ¶ 30). As relief, Plaintiff seeks (1) a declaration that Defendants' acts or omissions violated his rights under the Constitution and laws of the United States; (2) a preliminary injunction "ordering Defendants Donnie Ames and Betsy Jividen to stop holding [his] legal mail, putting [him] in administrat[ive] segregation for false charges, not letting [him] purchase envelopes to send out legal mail, making money disappear off [his] account balance to prevent [him] from sending out mail, and have officers stop harassing [him] for petty write-ups[;]" (3) money damages; and (4) an order allowing administrative segregation inmates physical access to the law library. He also seeks a jury trial. (*Id.* at 14-15, ¶¶ 31-37).

7

In addition to the March 3, 2020 grievance previously attached as an exhibit, Plaintiff has attached various documents related to his disciplinary violations in June, October, and November of 2020, and his appeals therefrom, as well as additional grievances and complaints about his ability to send and receive legal mail and to purchase envelopes, and concerning issues with the balance in his inmate account. (ECF No. 24 at 19-39, Exs. B-M).

    C.    *Defendants' Motion to Dismiss.*

On January 11, 2021, Defendants filed a Motion to Dismiss (ECF No. 28) and Memorandum of Law in support thereof (ECF No. 29) addressing Plaintiff's claims as they appear in the Supplemental Complaint document in ECF No. 24. Defendants' motion asserts that Plaintiff's Supplemental Complaint does not allege any specific conduct by Jividen or Ames and fails to state a plausible claim for relief against either of them. Their motion documents contend that Plaintiff has alleged nothing more than that these Defendants "have a general awareness of policies that fail to give unfettered inmate access to the libraries and that they tacitly approv[ed] the same." (ECF No. 29 at 4-5, citing ECF No. 24 at ¶¶ 28, 29).

Defendants further claim that Plaintiff has not sufficiently demonstrated that he has been denied meaningful access to the law library or the courts which caused actual harm to a pending or potential legal proceeding, so as to violate Plaintiff's First Amendment rights; that the Supplemental Complaint fails to state any plausible claims against Defendants under the Fifth or Fourteenth Amendments; that, in their official capacities, Defendants are immune from suit under the Eleventh Amendment and are not "persons" who can be sued under § 1983; that there is no valid basis to hold Defendants vicariously liable for the conduct of others; and that Defendants are entitled

to qualified immunity on all of Plaintiff's claims against them. (*Id.*) Defendants further suggest that Plaintiff's requests for injunctive relief, which do not implicate any direct action by Ames or Jividen, appear to be retrospective in nature and seek, in part, relief for claims concerning his disciplinary proceedings and access to legal mail and envelopes when no factual allegations concerning the same are pled in the Supplemental Complaint. (*Id.* at 5).

D.    *Plaintiff's First Motion to Amend Supplemental Complaint and related briefing.*

In response to Defendants' motion, on February 22, 2021, Plaintiff filed two documents.  First, he filed a Motion for Leave to File an Amended Complaint (ECF No. 33), in which his proposed "amendments" are contained in the body of the motion.  He also includes 63 pages of exhibits with that filing.  (ECF No. 33, Attach. 1, Exs. A-V). Plaintiff also filed a Memorandum of Law/Response in Opposition to Defendants' Motion to Dismiss, which contains nearly identical arguments and exhibits to those in the Motion for Leave to File Amended Complaint. (ECF No. 34).  In both documents, Plaintiff attempts to provide more information and evidence to support his denial of access claims, as well as his purported claims concerning the adequacy of his prison disciplinary proceedings, which the undersigned will address in greater detail in the "Discussion" section *infra*.  However, Plaintiff does not appear to be adding any other new claims or defendants by way of his proposed amendments.

On March 12, 2021, Defendants filed a "Combined Reply to Plaintiff's Response to Defendants' Motion to Dismiss and Response to Plaintiff's Motion for Leave to Amend Complaint" (hereafter "Combined Reply"), which summarizes and responds to Plaintiff's proposed amendments in ECF No. 33 and his arguments in opposition to

Defendants' motion to dismiss in ECF No. 34. (ECF No. 39). As aptly noted by Defendants, Plaintiff's motion for leave to amend and his response to the motion to dismiss largely repeat the general allegations previously pled in his Supplemental Complaint found in ECF No. 24. (ECF No. 39 at 1). Defendants further contend:

> The facts asserted in the Motion for Leave to Amend generally relate to four issues: (1) alleged denial of access to the prison library; (2) alleged "false charges" brought against the Plaintiff by Mount Olive Correctional Complex ("MOCC") officials; (3) allegations that Plaintiff's money has been improperly confiscated by MOCC officials; and (4) allegations that Plaintiff is being deprived access to envelopes to send legal mail. While some new factual detail may be offered by the Plaintiff in his Motion for Leave to Amend, Defendants assert those facts are generally encompassed by the arguments asserted in their Motion to Dismiss. ECF Nos. 28, 29.

(ECF No. 39 at 2). Defendants' Combined Reply then discusses each category of claims addressed in Plaintiff's documents and provides arguments in oppositions thereto. On March 24, 2021, Plaintiff filed a Memorandum of Law in Opposition to Defendants' Combined Reply, which largely repeats his prior allegations and arguments. (ECF No. 44). The undersigned will address the allegations and arguments made in these documents in greater detail as necessary in the "Discussion" section *infra*.

     E.    *Plaintiff's Motion for Preliminary Injunction.*

On March 22, 2021, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 42), and Memorandum of Law in support thereof (ECF No. 43). Plaintiff's motion seeks preliminary injunctive relief in the form of his release to the general prison population based upon his allegation that his placement in segregation violates his Fourteenth Amendment right to due process, has denied him meaningful access to the law library, and has caused him to "have documents dismissed," thereby denying him access to the courts. (ECF No. 43 at 1-2). Defendants' response in opposition to this motion contends that Plaintiff's motion largely repeats the allegations and assertions made in

his Supplemental Complaint and other proposed amended pleadings, which they claim are insufficient to establish any plausible claim for relief against them, and that Plaintiff cannot satisfy the stringent criteria to obtain a preliminary injunction.  (ECF No. 45).

       *F.*     *Plaintiff's Additional Motions to Amend or Supplement Complaint.*

On July 14, 2021, July 28, 2021, and August 12, 2021, Plaintiff filed three more motions for leave to amend or supplement his complaint (ECF Nos. 47, 49, and 50) and provided another "Supplemental Complaint" attached to ECF No. 49, which is identical to the proposed Supplemental Complaint in ECF No. 33, with the exception of adding a new section at the end titled "Newly Discovered Evidence," in which Plaintiff alleges that his post-conviction habeas corpus petition and a mandamus petition that he had filed in state court had been denied, and that he "had to withdraw" another civil action filed in this United States District Court (Case No. 2:21-cv-00267), all of which he attributes to his "lack of access" to the law library.  (ECF No. 49, Attach. 1 at 27).  The proposed supplement also includes an affidavit from Plaintiff and 72 pages of exhibits. (*Id.*, Attachs. 2 and 3).

Through the motion for leave to amend contained in ECF No. 50, Plaintiff similarly seeks to file a supplement addressing his exhaustion of remedies concerning his claim that his habeas corpus petition was denied and that he "has had" to withdraw another civil action filed in this federal court because he was not permitted meaningful access to the law library while in segregation.  (ECF No. 50).  The undersigned will discuss the specifics of these allegations in greater detail in the "Discussion" section *infra*.  Defendants have not been ordered to respond to these additional motions for leave to amend or supplement, and no responses thereto have been filed.  These motions are ripe for resolution.

## II.    STANDARDS OF REVIEW

### A.    Motions to Dismiss for Failure to State a Claim.

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly

12

give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

      B.     *Motions for Leave to Amend Complaint.*

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Rule 15(a)(1) permits a plaintiff one opportunity, as a matter of course, to amend his or her complaint, subject to certain time limitations. Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2), on the other hand, provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court indicated that leave to amend a pleading should be denied only (1) when the amendment would be prejudicial to the opposing party, (2) there has been bad faith on the part of the moving party, or (3) the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, in conjunction with their motion to dismiss, Defendants appear to be asserting that, even considering Plaintiff's proposed amendments, his claims still fail to state a plausible claim for relief against Defendants Ames and Jividen and, thus, any such amendments would be futile.

An amendment is futile under Rule 15 if it would fail to survive a motion to dismiss for failure to state a claim.  *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  Thus, it would be futile for the court to grant leave to amend a complaint when the proposed amendment is "clearly insufficient or frivolous on its face."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986); *see also Rambus, Inc. v. Infineon Tech., AG*, 304 F. Supp. 2d 812, 819 (E.D. Va. 2004) ("Courts generally favor the 'resolution of cases on their merits' . . . [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, e.g., under motions to dismiss or for summary judgment, . . . , or for resolution at trial.") (q*uoting Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

      C.    *Motions for Preliminary Injunction*

Plaintiff has filed a separate Motion for Preliminary Injunction (ECF No. 42), which Defendants have opposed (ECF No. 45).  Rule 65(a) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction, an extraordinary remedy, only on notice to the adverse party.  Fed. R. Civ. P. 65(a).  "[P]reliminary injunctions are not to be granted automatically." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).  Rather, the discretion of the court to issue such an injunction should be "sparingly exercised."  *Id.* at 286.

To obtain a preliminary injunction, a movant must demonstrate that "(1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest."  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real*

14

*Truth*").  All four factors must be met to justify this extraordinary relief.  *Real Truth*, 575 F.3d at 347.

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial.  *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945).  Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). * * * Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that the movant must make a clear showing that he is likely to be irreparably harmed, and particular attention must be paid to the public consequences in employing the extraordinary remedy of an injunction.  The movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Additionally, courts should grant preliminary injunctive relief involving the management of correctional facilities only under exceptional and compelling circumstances.  *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); *see also Miles v. Bell,* No. 20-cv-2107, 2021 WL 229674, at *5 (D. Md. Jan. 22, 2021) (finding preliminary injunctive relief was not warranted on prison conditions claims).

### III.    DISCUSSION

A.    *Defendants' Motion to Dismiss and Plaintiff's Motions for Leave to Amend or Supplement Complaint.*

Defendants' motion to dismiss asserts that Plaintiff's first Supplemental Complaint fails to state any plausible claim upon which relief can be granted against them. Their Combined Reply reiterates that position and further asserts that any proposed amendments set forth in the additional supplements submitted by Plaintiff fail to cure the deficiencies in his claims and are, thus, futile. The undersigned will address each category of claims raised by Plaintiff and the arguments and evidence offered by the parties to support their positions.

1.    Allegations Concerning Denial of Access to Library and Courts.

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners have a constitutional right to meaningfully and effectively access the courts. Toward this effort, correctional facilities have an obligation to provide adequate law libraries, or assistance from individuals trained in the law. *Id.* at 828. However, as the Supreme Court later clarified, this obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Essentially, the right of access to the courts includes providing prisoners with the means to "attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Id.*

Plaintiff's Supplemental Complaint and his proposed amendments assert that he is being deprived meaningful access to the MOCC law library because he is not permitted unfettered access thereto. Despite conceding that general population inmates

at MOCC are regularly permitted library access two days a week (ECF No. 24 at 2; ECF No. 33 at 3), Plaintiff contends that Defendants are nonetheless violating his rights because, under his interpretation of MOCC Operational Procedure 507, he is entitled to unfettered <u>daily</u> access to the prison library.  (ECF No. 33 at 3; ECF No. 49-1 at 3).[6]

Plaintiff further contends that Defendants were personally involved in violating his rights "by not following their own policies and procedures" and that they were personally aware of and approved of the violation of his rights when they responded to his grievance and failed to do anything to correct the issues addressed therein.  (*Id.* at 4).  Plaintiff cites the following portion of MOCC Operational Procedure 507:

> The maximum capacity for the library is no more than thirty (30) inmates at any one time (excluding inmate workers). Access to the library shall be through the Pass system. <u>Passes shall be issued to general population inmates on a daily basis</u>.

(ECF No. 33 at 3 and Attach. 1, Ex. A at 3) (emphasis added).  Based upon this excerpt, Plaintiff alleges that each general population inmate is entitled to access to the law library every day.  His proposed amendment further states: "[during the time frame of 2-21-2020 (day of arrival at MOCC) until they changed the policies throughout the year, I was not being issued daily passes to the law library as the policy stated."  (ECF No. 33 at 3).  Plaintiff further asserts that his "due process" rights were violated by not having daily access to the prison library. (*Id.* at 4, 23-25).

Plaintiff's proposed amendments also repeat his allegations made in his first Supplemental Complaint that he is improperly denied physical access to the law library while in segregation and that the "page citing system" used by the prison to provide segregated inmates with legal materials is insufficient.  He further contends that, due to

---

[6]  Because the proposed Supplemental Complaint in ECF No. 49, Attach. 1 is identical to that in ECF No. 33, with the exception of the "Newly Discovered Evidence" section added at the end, when referring to allegations that are identical in each document, the undersigned will cite only to ECF No. 33.

inadequate law library staffing, materials are not provided in a timely manner, often being delivered only about once a week instead of three times per week, as set forth in the Operational Procedure.  (ECF No. 33 at 9-11; ECF No. 34 at 5-7).  He also complains that he is provided only printouts or copies rather than actual books.  (*Id.*)

Additionally, Plaintiff now alleges that he suffered actual harm from being denied meaningful access to the law library because his motion for reconsideration of his criminal sentence, which he filed on March 2, 2020, was denied by the Circuit Court of Raleigh County on May 13, 2020.  (ECF No. 33 at 11-12, ¶ 15, at 16, ¶ 19, and Attach. 1 at 30-32, Ex. O).  Plaintiff further asserts that his restricted access to the law library and the insufficient request form system used in segregation has caused him to be unable to properly respond to a motion to dismiss (which appears to be related to the instant motion to dismiss in this case), referencing a law library request form in which he requested information on "how to respond to a motion to dismiss in a lawsuit" and further requested information on how to challenge a prison disciplinary hearing based upon the alleged failure to follow proper procedures.  Plaintiff contends that the law library did not adequately respond to these requests.  (ECF No. 33 at 12-14, ¶ 16 and Attach. 1 at 35, Ex. P).

Also, Plaintiff again alleges that the lack of meaningful access to the law library harmed his ability to properly support his ODC complaint (initially addressed above).  It further appears that the ODC complaint was ultimately dismissed by the Lawyer Disciplinary Board on February 12, 2021.  (*Id.* at 14, ¶ 17 and Attach. 1 at 42, Ex. Q).  Additionally, Plaintiff again contends that the barriers to access to the law library have hindered his ability to properly prosecute his habeas corpus petitions.

From his proposed amendments, it appears that Plaintiff did file a post-conviction habeas corpus petition in the Circuit Court of Raleigh County on April 27, 2020 (while he was in general population and he indicates that he also had a legal aide assisting him at that time), but he suggested that he might seek to bring additional claims for habeas relief.  His proposed amendments in this matter aver that he suffered "arguably actual harm" because he could not develop any additional grounds for relief absent more meaningful access to the law library.  (ECF No. 33 at 14-15, ¶ 18).[7]  Plaintiff further alleges that, due to denial of law library materials, he was unable to file a pre-trial habeas corpus petition in another criminal matter challenging the denial of a preliminary hearing.  However, he provides no further factual allegations concerning that matter.  (*Id.*)

Finally, in his proposed amendments, Plaintiff alleges, for the first time, that he is being denied access to a typewriter or typing service, which he claims is somehow denying him access to the courts.  (ECF No. 33 at 20-21, ¶ 22).  However, he fails to support this allegation with any specific facts showing actual harm.  Instead, Plaintiff appears to be relying on grievances and affidavits from other inmates making similar complaints.  (ECF No. 33, Attach. 1 at 53-63, Ex. U).  However, Plaintiff has not demonstrated that he is required to submit typed legal work versus hand-written filings, and he has not tied this allegation to any actual injury to particular legal claims.

In an attempt to tie these alleged violations to Ames and Jividen, Plaintiff again generally asserts that these Defendants, as supervisors, "created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a

---

[7]  Plaintiff's proposed "Supplemental Complaint" in ECF No. 49 and an exhibit attached thereto demonstrate that Plaintiff's post-conviction habeas corpus petition was denied on the merits by the Raleigh County Circuit Court on June 15, 2021.  (ECF No. 49 at 27 and Attach. 3 at 53-63).

policy or custom" and that "these policies erected barriers preventing [Plaintiff] access to the courts causing actual injury." (ECF No. 33 at 24-25, ¶¶ 28, 29). However, even with his proposed amendments, he establishes no other individual conduct by Ames and Jividen beyond their affirmance of the denial of his March 2020 grievance.

Defendants asserts that Plaintiff has mischaracterized the text of Operational Procedure 507 by suggesting that it requires that all inmates shall receive passes on a daily basis, which they contend is an unreasonable interpretation of the policy. (ECF No. 39 at 3). Defendants further assert that "[a]t least two federal district courts within the Fourth Circuit have rejected arguments that the right to access the courts is violated by limiting an inmate to one hour of law library time every week or every other week, where no actual harm from the time limitation is shown." *See Watts v. Johnson*, No. 7:07-cv-00323, 2007 WL 2110341, at *1-*2 (W.D. Va. July 18, 2007); *Sterling-Earl v. Gray*, No. 7:06-cv-00196, 2006 WL 1318367, at *5-6 (W.D. Va. May 15, 2006); *Skundor v. Painter*, No. 5:00-0463, 2002 WL 32334397, at *4-6 (S.D. W. Va. Sept. 26, 2002); *see also Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) ("In order for an inmate to show that the library or legal assistance program hindered his efforts to pursue a civil legal claim, he must show that he encountered more than mere delay or inconvenience."). (ECF No. 29 at 7-8). Defendants emphasize that Plaintiff has admitted that MOCC general population inmates usually have access to the prison library two days a week. (*Id.* at 8). Thus, without a showing of actual injury, Plaintiff cannot state a claim based solely on not having daily access to the law library.

Defendants further assert that Plaintiff's contention that he must provide exact case citations is incorrect and that he unreasonably relies on only one request in which he was advised that, due to temporary technology issues with the library's legal research

program, he needed to provide more specific citations (ECF No. 33, Attach. 1 at 49, Ex. R).  Defendants note that, in all of the other law library request forms attached by Plaintiff as exhibits to his Motion for Leave to File Amended Complaint, and as further demonstrated by request forms attached to their motion documents, Plaintiff was able to makes general requests for materials related to the topics that he was attempting to research, and he was provided those materials.  (ECF No. 28, Attach. 2; ECF No. 39 at 3-4 and Attach. 2).

Defendants' Combined Reply further specifically addresses Plaintiff's allegations that he suffered injury by not being able to adequately prepare three different legal documents: a motion to reconsider a sentencing in his state criminal case; a complaint to the West Virginia Lawyer Disciplinary Board; and a state petition for habeas corpus in his state court case.  Defendants assert that, contrary to Plaintiff's claims, the motion to reconsider his criminal sentence was denied because "the Court deem[ed] the motion untimely filed." (ECF No. 39 at 5 citing ECF No. 33, Attach. 1 at 31).  Defendants further note that the circuit court found that:

> Assuming the motion was timely filed, and the matter was to be considered on the merits, the additional problem facing the Defendant is that he references no events that have occurred between imposition of sentence and the filing of the motion.  As such, there are no grounds to support a change in the sentence.

(*Id.*)  Accordingly, Defendants assert that, "because the deficiency with the motion was that it was untimely filed and had no factual grounds in support, rather than legal arguments, there is no basis for Plaintiff's claim that he suffered 'actual harm' relating to his Motion to Reconsider being denied."  (ECF No. 39 at 5-6).

Defendants further assert that the decision denying Plaintiff's ODC complaint also demonstrates that such complaint was dismissed for lack of evidentiary support

and not for legal insufficiency. (*Id.* at 6). The decision, which was attached by Plaintiff to his proposed Supplemental Complaint (ECF No. 33, Attach. 1 at 42-46, Ex. Q) states that "evidence must be clear and convincing to support a finding of a violation of the Rules of Professional Conduct, and the evidence presented in this case is insufficient to establish that Respondent violated any of the Rules of Professional Conduct." (*Id.* at 45). Accordingly, Defendants contend that the plain language of the decision demonstrates that denial of Plaintiff's complaint was due to a factual insufficiency, not the failure to cite specific legal authority and, thus, such denial had nothing to do with the denial of access to the MOCC library and does not constitute "actual harm." (ECF No. 39 at 6).

With respect to his habeas corpus proceedings, as noted previously herein, Plaintiff provided a library request form as an exhibit to his Motion for Leave to File an Amended Complaint (ECF No. 33, Attach. 1 at 49), which he offers as proof that his ability to adequately prepare his habeas petition was inhibited. Defendants assert that this form, dated December 22, 2020, is the only form in the record in which Plaintiff received a response requesting a specific citation for materials due to a temporary technical problem in the library. (ECF No. 39 at 7). Defendants acknowledge that this form sought materials related to a failure to be transported to a preliminary hearing. (*Id.*)

However, Defendants further assert that Plaintiff's criminal docket sheet reveals that he filed a habeas corpus petition on December 23, 2019 (while he was incarcerated at the Martinsburg Correctional Center), which alleged, in part, that his rights had been violated by undue delay in holding a preliminary hearing. (ECF No. 39 at 7 and Ex. 3). On January 7, 2020, Raleigh County Circuit Court Judge Andrew Dimlich granted the

22

Plaintiff's petition and ordered that a preliminary hearing be held, unless Plaintiff is indicted prior to the hearing. (*Id.* at 7 and Ex. 4). Additionally, according to the ODC decision provided by Plaintiff as an exhibit to his Supplemental Complaint, Plaintiff was thereafter indicted, and the issue of a preliminary hearing became moot. (ECF No. 33, Attach. 1 at 44, Ex. Q).

Defendants assert that, based upon these proceedings, Plaintiff has failed to establish that he has suffered actual harm from the alleged "barriers" to his access to the MOCC library and that Plaintiff has failed to establish that his restricted access to the law library and the procedures for him to access legal materials while in segregation have denied him meaningful access to the courts. The undersigned agrees.

Plaintiff's most recent proposed amendments assert that he has suffered actual harm due to the denial of his post-conviction habeas corpus petition in Raleigh County, a mandamus petition that he apparently filed in the Supreme Court of Appeals of West Virginia, and his own decision to voluntarily dismiss, without prejudice, Case No. 2:21-cv-00267, filed in this United States District Court (and assigned to the presiding District Judge herein), which alleged a claim of deliberate indifference to a serious medical need (a hand injury) and due process claims related to his prison disciplinary proceedings. Plaintiff voluntarily dismissed that case after the defendants filed a motion to dismiss. Nonetheless, Plaintiff summarily asserts that these matters were dismissed or denied because of "lack of access to the law library" without providing more factual allegations as to how his lack of access caused the dismissals of these matters. (ECF No. 49, Attach. 2). Such conclusory allegations are insufficient to sustain a plausible claim for relief.

23

Based upon the allegations contained in Plaintiff's Supplemental Complaint and his proposed amendments thereto, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to sufficiently state a claim that he has been denied meaningful access to the MOCC law library or that his restricted access thereto has resulted in actual harm to any of his legal proceedings.  The dismissal of Plaintiff's ODC complaint and his habeas corpus proceedings appear to have been denied based upon a lack of evidentiary support for his claims, not any insufficient legal arguments. Similarly, Plaintiff's motion for reconsideration of his criminal sentence was denied as untimely (and the time for such filing expired before he even arrived at MOCC) and also because there was no factual basis for reconsideration, not because his motion was legally deficient.  Plaintiff does no more than speculate that greater access to the law library would have changed the outcome of any of these various legal proceedings.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's allegations, even considering his proposed amendments and additional exhibits, fail to give rise to a plausible claim for relief under the First or Fourteenth Amendments for denial of access to the courts, and that Plaintiff's proposed amendments concerning the same would be futile.

2.    Allegations Concerning Inmate Account Balance.

Plaintiff further claims that "these defendants also took money from my account" and that this occurred "during my process of filing a lawsuit."  (ECF No. 33 at 6; ECF No. 34 at 8).  According to Defendants, this allegation relates to a technical problem where the Plaintiff's inmate account was erroneously debited $306.10 for filing fees for the instant civil action and that, as admitted by Plaintiff, that "amount was corrected." (*Id.*).  Despite the correction of the error, Plaintiff broadly asserts that "even though the

amount was corrected this violation occurred during my process of filing a lawsuit. This is a violation of due process [and] a violation of my Fourteenth Amendment." (*Id.*) Plaintiff has now attached as an exhibit to his motion for leave to amend, a printout of his inmate account which appears to confirm the debited amount was returned to his account and then correctly debited.  (ECF No. 33, Attach. 1 at 29).  As aptly noted by Defendants, Plaintiff makes no specific factual allegations relating to Ames or Jividen concerning this issue.  Defendants further contends that these allegations do not rise to the level of a constitutional violation and do not implicate any individual conduct by Ames or Jividen.

Despite his assertion that this error occurred while he was in the process of filing a lawsuit, Plaintiff does not allege that such error prohibited him from actually filing any lawsuit or that any lawsuit was dismissed because he failed to pay a filing fee or because of an insufficient balance in his inmate account.  Accordingly, this allegation does not give rise to any basis for a First Amendment claim of denial of access to the courts.

Likewise, even if Plaintiff could establish that the temporary deprivation of his inmate funds constituted a property interest that could give rise to a due process right under the Fourteenth Amendment, *see Burks v. Pate*, 119 F. App'x 447, 450 (4th Cir. 2005) ("A prisoner has a protected property interest in his prison trust account"); *Miller v. Terry*, No. 2:17-CV-04224, 2020 WL 7075222, at *2 (S.D.W. Va. Oct. 20, 2020), report and recommendation adopted, No. 2:17-CV-04224, 2020 WL 7061754 (S.D.W. Va. Dec. 2, 2020) (collecting cases), he has not alleged or established that he suffered any actual injury from such temporary deprivation and the error was ultimately corrected through administrative channels and he had other state remedies available to him.  *See, e.g., Chhoun v. Woodford*, No. C 03 3219 SI, 2005 WL 1910930, at *6-9 (N.D.

Cal. Aug. 10, 2005) (temporary deprivation of personal property did not violate prisoner's due process rights); *Miller, supra*, 2020 WL 7075222, at *3 (Complaint failed to establish a plausible procedural due process claim "because the Complaint fails to allege that the prison's available grievance process, or other available state remedies, were inadequate to make a post-deprivation challenge to the propriety of the deductions from his inmate account."). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that these allegations fail to state a plausible claim upon which relief can be granted and that Plaintiff's proposed amendments respecting the same are futile.

### 3.    Allegations Regarding Unavailability of Envelopes.

Plaintiff also alleges that he was denied the right to purchase envelopes. (ECF No. 33 at 5-6, ¶ 10; ECF No. 34 at 8). Although Plaintiff has now provided an exhibit suggesting that envelopes were not in stock in the commissary on November 11, 2020 (ECF No. 33, Attach. 1 at 7, Ex. B; ECF No. 34, Attach. 1 at 7, Ex. B), Defendants assert that "this appears to be the sole instance when envelopes were not available." (ECF No. 39 at 10). Defendants further assert that, as demonstrated through grievance documents also provided by the plaintiff with his proposed amendments, envelopes were available in the commissary by November 12, 2020 (the following day) and, since that time, commissary records demonstrate that Plaintiff has purchased a plethora of envelopes. (*Id.* at 11). Thus, Defendants contend that:

> It appears that Plaintiff's entire claim that he is being denied envelopes in violation of his constitutional rights arises from a single occasion on which envelopes were out of stock in early November 2020. Obviously, the Plaintiff's subsequent purchase of well over 100 envelopes over the next few months demonstrates the envelopes were replenished and available to the Plaintiff. The grievance produced by the Plaintiff further indicates the rejection was not appealed and, thus, Plaintiff failed

26

to exhaust administrative grievance procedures available to him relating to this claim.

(*Id.* at 10).

Significantly, Plaintiff has not tied the alleged denial of access to envelopes to any specific allegation of actual harm to his ability to seek redress from the courts. He generally alleges that this "caused [him] to miss a deadline to ask the court for an extension of time." (ECF No. 34 at 8). It appears that Plaintiff may be referencing his motion for an extension of time to file his more definite statement in this case, which was granted and, thus, such allegation fails to demonstrate any actual harm. Moreover, as noted by Defendants, Plaintiff's allegations relating to denial of access to envelopes do not appear to directly involve Ames or Jividen. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's allegations concerning the denial of access to envelopes, as pled in his Supplemental Complaint and the proposed amendments thereto, fail to state a plausible claim upon which relief can be granted against Defendants.

4.    Allegations Regarding "False" Disciplinary Charges.

Plaintiff's proposed amendments and his response to Defendants' motion to dismiss make a variety of claims relating to false disciplinary charges being brought against him by "this prison." (ECF No. 33 at 7-8, ¶ 11; ECF No. 34 at 9-10). This appears to be a basis of Plaintiff's due process claims under the Fifth and Fourteenth Amendments.[8]

---

[8] To the extent that Plaintiff has alleged that Defendants' conduct violated his Fifth Amendment rights, the Fifth Amendment Due Process Clause only protects against due process violations caused by the federal government. *See Public Utilities Comm'n v. Polak*, 343 U.S. 451, 461 (1952). As Plaintiff has only alleged wrongful conduct by state actors, their conduct is governed by the Fourteenth Amendment, and the Fifth Amendment Due Process Clause has no application to his due process claims. Moreover, Plaintiff has not alleged any facts to support any other cognizable claim under the Fifth Amendment.

Plaintiff essentially states that a delay in his hearing for charges brought on June 15, 2020 violated his constitutional rights because the hearing was held more than 72 hours after the charges were brought. (*Id.*). He also states that he was wrongfully found guilty of an assault that occurred on October 5, 2020, after the hearing officer "never reviewed the camera evidence." (*Id.*) For each alleged violation, Plaintiff alleges that Ames and Jividen received his appeals, but "allowed for this violation of due process of the Fourteenth Amendment for procedural due process." (ECF No. 34 at pgs. 9-10). Thus, Plaintiff has identified no other conduct by either Jividen or Ames except for their denial of his administrative appeal.

As noted by Defendants, when a defendant is lawfully convicted and confined to jail, "he loses a significant interest in his liberty for the period of his sentence." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). The Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, in analyzing a procedural due process claim, the court must first identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). Here, in order to retain a liberty interest in avoiding a particular condition of confinement, Plaintiff must establish that the confinement presents a "dramatic departure from the basic conditions of [his] sentence," in that it imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484-485 (1995). He has not done so.

---

Accordingly, his alleged Fifth Amendment claims must be dismissed. Thus, the undersigned will only address this claim under the Fourteenth Amendment.

Moreover, as noted by Defendants, while Plaintiff does make general and conclusory statements that he was unfairly placed in administrative segregation, those allegations do not directly involve Ames or Jividen. (ECF No. 24 at ¶ 15, 28-29). It is well-settled that a prison official may not be held vicariously liable for the actions of his or her subordinates. Rather, a supervisor, by his own conduct, must have been deliberately indifferent to, or tacitly authorized or approved, constitutional violations by his or her subordinates. *See Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (government officials may not be held vicariously liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior* and must allege that each defendant's own individual actions violated the Constitution).

The only factual assertions against either Jividen or Ames is that they were either aware of his placement in administrative segregation or that they denied grievance appeals. (ECF No. 24 at ¶¶ 8-9). Plaintiff has not sufficiently set forth a factual basis that his placement in MOCC administrative segregation has violated his due process rights. Further, Plaintiff has stated no factual basis that either defendant Jividen or Ames were substantially involved in any wrongful conduct. Thus, any claim against Jividen or Ames appears to be rooted in supervisory liability.

However, Plaintiff's threadbare and conclusory allegations in this regard, stating little more than the role of these Defendants in the denial of Plaintiff's grievances and disciplinary appeals, are insufficient to state any plausible claims against them. *See, e.g.,*

29

*Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir 2007) (inadequacy of allegations involving supervisory liability based on denial of grievances); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015) (granting a motion to dismiss for failure to state a claim of supervisory liability claims predicated on the denial of grievances); *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D.W. Va. Sept. 30, 2015) (Goodwin, J.) (inadequacy of allegations involving supervisory liability claim based upon denial of grievances).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint documents and supplements fail to state a plausible Fourteenth Amendment due process claim against Ames and Jividen arising out of his prison disciplinary hearings.

> 5.    Allegations regarding "vanishing" grievances.

Plaintiff's complaint documents and supplements also summarily suggests that, during the time that he has been in segregation, grievances he has attempted to file have "vanished." To the extent that Plaintiff has generally asserted that alleged interference by prison staff with the processing of his grievances violated his due process rights, "there is no constitutional right to participate in grievance proceedings, *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Accordingly, Plaintiff's assertion that his due process rights were violated by interference with the grievance process is legally frivolous and should be dismissed *See also Newkirk v. Chappell*, No. 3:13-cv-73-HEH, 2013 WL 5467232, at *3 (E.D. Va. Sept. 30, 2013); *Cromartie v. N. Carolina Dep't of Safety*, No. 1:17-cv-980, 2020 WL 4926633, at *6 (M.D.N.C. Aug. 21, 2020), *report and recommendation adopted sub nom. Cromartie v. N.C. Dep't, of Pub. Safety*, No. 1:17-cv-980, 2020 WL 5518480

(M.D.N.C. Sept. 14, 2020) ("the Constitution affords no substantive due process right to a prison grievance procedure."). Thus, even liberally construed, Plaintiff's allegations fail to provide specific facts to move his proposed due process claims above the speculative level and fail to state a plausible Fourteenth Amendment claim against Ames or Jividen.

For all of the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint documents (his Complaint, Supplemental Complaint any proposed amendments thereto, which appear to be futile) fail to state a plausible claim for relief against Defendants and, thus, this civil action should be dismissed under Rule 12(b)(6) and the dictates of *Twombly* and *Iqbal*.[9]

      B.    *Plaintiff's Motion for Preliminary Injunction.*

As noted throughout this Proposed Findings and Recommendation, even based upon his proposed amendments, Plaintiff has failed to sufficiently allege that the conduct of Ames and Jividen has caused a violation of his federal constitutional rights. Accordingly, Plaintiff has not made a clear showing that he is likely to succeed on the merits of any of his claims or that he will be irreparably harmed without the imposition of preliminary injunctive relief against them. *See Winter*, *supra*, 555 U.S. 7 (2008); *Real Truth*, 575 F.3d at 347. In fact, in light of the undersigned's recommendation that his current Supplemental Complaint and proposed amendments fail to state any claim upon which relief can be granted against Defendants Ames and Jividen, Plaintiff has further failed to demonstrate any entitlement to injunctive relief at all. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to

---

[9] In light of the proposed findings that Plaintiff's complaint documents and proposed amendments fail to state any plausible claim for relief against Ames and Jividen, the undersigned finds it unnecessary to address the other ground for dismissal raised in their motion to dismiss and combined reply,

establish a right to preliminary or permanent injunctive relief and, therefore, his Motion for Preliminary Injunction (ECF No. 42) should be denied.

### IV.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Motions for Leave to Amend or Supplement his Complaint (ECF Nos. 33, 47, 49, and 50), **DENY** Plaintiff's Motion for Preliminary Injunction (ECF No. 42), **GRANT** Defendants' Motion to Dismiss Complaint (ECF No. 28), and **DISMISS** this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

August 27, 2021

Dwane L. Tinsley
United States Magistrate Judge